## Anton W. Radomski, Defendant in Error, v. The E. R. Stege Brewery, Plaintiff in Error.

### Gen. No. 16,764.

1. STATUTE OF FRAUDS—*when contract not within.* Where plaintiff performed within a year his agreements to execute a three years' lease of certain saloon premises to a prospective tenant under a provision, that only defendant's beer was to be sold thereon by the lessee, which provision the lessee performed, and further to repair the premises at plaintiff's expense, and nothing remained to be done but the payment by defendant to plaintiff of 50 cents per barrel on all such beer sold on such premises during the life of the lease, the statute of frauds is not available as a defense.

2. CONTRACTS—*when do not lack mutuality.* Plaintiff who was under contract, binding on his grantees, lessees and assigns, to sell only the defendant's beer on certain premises, agreed to lease the premises to a third person and repair them and defendant agreed to pay plaintiff fifty cents on every barrel of beer sold on the premises during the life of the lease. *Held,* that the contract was not lacking in mutuality because, since there was danger of the premises becoming vacant, defendant was interested in having the business continue.

McSURELY, J., dissenting.

Error to the Municipal Court of Chicago; the Hon. FREDERICK L. FAKE, Jr., Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed October 3, 1912. Rehearing denied October 17, 1912.

SIMEON STRAUS and IRA E. STRAUS, for plaintiff in error.

BERT D. WING, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Anton W. Radomski, defendant in error and hereinafter called plaintiff, brought suit in the Municipal Court of Chicago against the E. R. Stege Brewery, a corporation, plaintiff in error, and hereinafter called the brewery, to recover from it the sum of $458.50, which he claimed was due him by virtue of a verbal

contract entered into a few days prior to February 21, 1908. A trial was had before a jury, which resulted in a verdict in favor of plaintiff for the full amount of his claim. Judgment was entered upon the verdict and this writ is prosecuted to reverse that judgment.

The material facts are as follows: In April, 1907, plaintiff purchased a piece of property, improved with a brick building, situated at the corner of West Twenty-Third place and Oakley avenue in the city of Chicago. At the time of the purchase he borrowed $3,000 from the brewery, securing that loan by a trust deed on the property, signed by himself and wife, and running to Richard G. Stege, trustee, which provided for the payment of the said $3,000 three years after date, with interest at the rate of 5 per cent. per annum, payable semi-annually. By said trust deed, the grantors covenanted and agreed, among other things, to maintain upon the premises at all times until the full payment of said indebtedness, a reputable lager beer saloon, to promptly pay all license fees therefor, to keep on hand for sale, and to sell, on said premises domestic beer adequate to the demands of the trade at said place, to purchase all such beer used at said place from the E. R. Stege Brewery, its successors and assigns, only, not to purchase, sell, use, give away or dispose, and not permit to be purchased, sold, used, given away or disposed of, at said place, during said time, such beer of any other person, persons or corporation, not to lease or convey said premises except subject to the above agreements, and to enforce the observance of such agreements by the grantees, lessees and assigns of said grantors, which agreements, by the terms of said trust deed, were to be binding upon such grantees, lessees and assigns. From May 1, 1907, to about February 21, 1908, a son of plaintiff conducted a saloon business on said premises, but the same proved unprofitable. Plaintiff received no

rent for the premises from his son during said period for the reason that the son did not make sufficient money out of the business to pay him rent, and plaintiff, as he testified, was "all the time donating money into it." During February, 1908, they finally decided, if possible, to sell the saloon business and lease the premises. A prospective tenant was found who would lease the premises for saloon purposes for three years at a rental of $35 per month, providing certain necessary repairs were made upon the building, and would buy his beer from the Stege brewery. A few days prior to February, 21, 1908, according to the testimony of both plaintiff and his son, plaintiff, accompanied by said son, called upon George R. Stege, president of the brewery, at his office, informed him of their decision to sell the saloon business and to lease the premises, of the prospective tenant and under what conditions the latter would sign a three years' lease for the premises, that the repairs necessary to be made to satisfy said tenant would cost plaintiff about $1,000, that plaintiff could not afford to disburse such a large amount in repairs and only receive in rent the sum of $35 per month, which was the highest monthly rental said prospective tenant would pay; that plaintiff then told Stege what improvements plaintiff proposed to make on the premises, whereupon Stege called attention to the cost of other interior improvements which would be necessary to make the place attractive and which he figured would cause an additional expense of about $360, over and above what plaintiff had mentioned; that after further conversation, Stege said to plaintiff, "If you go ahead and do these things I will make an arrangement whereby you can come out right on it; we can give you fifty cents a barrel on every barrel of beer sold there during the life of the lease. Go ahead and sign that lease with these people for that amount of money;" and that, thereupon, plaintiff agreed to execute the proposed three

years' lease of the premises to said prospective tenant and further agreed to pay for all the repairs, including those mentioned by Stege, and Stege agreed to make settlements with plaintiff each month on the basis of fifty cents for each barrel of beer delivered by the brewery to said tenant on said premises. The testimony further shows that on February 21, 1908, plaintiff made a written lease of said premises, with the consent of the brewery, to said prospective tenant for three years from that date, at a monthly rental of $35, in which it was provided that plaintiff would make the improvements on the premises agreed upon during June, 1908, with an allowance of five dollars on the rental "for time no improvements made," and in which it was further provided that "the beer shall not be changed unless with consent of the owner of the property;" that said tenant immediately after the execution of said lease entered into the possession of the premises and commenced running a saloon business; that from February 21, 1908, to March 1, 1908, eight barrels of beer were sold and delivered to said tenant on said premises by the brewery, for which plaintiff received from the brewery the sum of $4, which is at the rate of fifty cents per barrel; that from March 1, 1908, to October 1, 1909, 917 barrels of beer were sold and delivered to said tenant at said premises by the brewery; that plaintiff at no time has received from the brewery any money on account of said 917 barrels so delivered, which at fifty cents per barrel amounts to $458.50; that plaintiff had completed all of the improvements to said premises which he agreed to make at the time of the said conversation with Stege, at a cost of about $1,500, and had otherwise complied with his part of said verbal contract, all within one year from the date of said verbal contract, which was, as we have seen, a few days prior to February 21, 1908; that the president of the brewery, Stege, while admitting that he had a conversa-

tion with plaintiff and his said son, substantially as above outlined, and that he told plaintiff to go ahead and make the improvements, and that while the son of plaintiff was running said saloon the brewery had allowed said son a discount of fifty cents per barrel for beer sold and delivered said son, denied that at said conversation, or at any subsequent time, he had agreed to allow plaintiff fifty cents per barrel for beer delivered to said tenant at said premises during the life of said lease, or any other amount.

The main contention of counsel for the brewery is that, considering that said verbal agreement was established by the evidence, said agreement by its terms was not to be performed within the space of one year from the making thereof, and is, therefore, void under the Statute of Frauds, and the judgment is erroneous. We do not agree with this contention. Plaintiff fully performed his part of the verbal contract. He executed a written lease to the proposed tenant, and that tenant immediately took possession of the premises and commenced operating a saloon. The tenant by the terms of the lease, as well as by the terms of the trust deed, was required to purchase his beer from the brewery and did so. Plaintiff, also, made the improvements, which he had agreed to make, within the space of one year. Nothing remained to be done but the payment by the brewery to plaintiff of the money at the rate of fifty cents per barrel, for such beer as should be sold and delivered to said tenant at said premises during the period mentioned. "The Statute of Frauds cannot be interposed as a defense where the contract is fully performed on the part of the plaintiff; in other words, the Statute of Frauds cannot be availed of for the purpose of perpetrating a fraud." MacDonald v. Crosby, 192 Ill. 283, 289; see also Hodgens v. Shultz, 92 Ill. App. 84, 86; Curtis v. Sage, 35 Ill. 22; Fraser v. Gates, 118 Ill. 99; Hulse v. Hulse, 155 Ill. App. 343, 348.

It is further contended by counsel for the brewery that the agreement lacked mutuality, in that the brewery could enjoy no benefits as a result of the performance of the agreement on the part of plaintiff, and that if the judgment stands, it in effect compels the brewery to partially pay for betterments to plaintiff's property, made by plaintiff for his sole benefit. We think the brewery received benefits. The brewery was engaged in the business of selling lager beer. It had sold a considerable amount of beer to this saloon in the past at a profit. It was interested in having the saloon business and its deliveries of beer to said premises continue. There was danger of the place becoming vacant. If the improvements were not made, in all probability neither the proposed tenant nor anyone else would conduct a saloon business there. While it was a financial benefit to plaintiff to obtain a tenant for his property, it was also of financial benefit to the brewery to make the arrangement with plaintiff, whereby he was induced to agree to make the improvements demanded, thereby enabling the brewery to continue its sales and deliveries of beer to said premises. The judgment of the Municipal Court is affirmed.

*Affirmed.*

MR. JUSTICE MCSURELY dissents.